Thank you. May it please the Court, this case concerns a legal sufficiency of evidence standard in a specific type of USERRA case known as a Butterball Claim. To establish a claim to relief, a complainant must show by preponderant evidence, first, that he was mischarged leave over intervening non-work days, and second, that as a result he was forced to use annual leave or another type of leave to perform his military obligations. Last year, this Court held in Duncan v. Department of the Air Force that the Board did not err in concluding that the petitioner in that case, a non-supervisory employee, failed to establish his claim by preponderant evidence where he offered only his own testimony, which was based upon military pay records obtained from Defense Finance Accounting Service. So exactly how do you think this case differs from Duncan? We believe that this case is distinguishable in two critical respects. First, Tierney was himself a supervisor at the employing agency responsible for charging leave. This goes to the element of being mischarged over intervening non-work days. Well, so you think his status as a supervisor, therefore, gives greater credibility to his claim that the government had a policy which it employed of charging military leave on the weekend days when it shouldn't have? Is that the point, that him being a supervisor gives greater credibility to his personal testimony? And it provides direct evidence of how leave was actually charged at the employing agency. But he isn't his own supervisor, right? He isn't the person who was in charge of deciding how to charge his personal leave. Correct. But we believe that it shows how leave was charged at that employing agency. But what about the 16 days that he alleged? He alleged 44 days of leave he had to take because of being mischarged leave on other days. And the government has, it seems, conclusively established that 16 of those days fall in pay periods for which no annual leave and no leave without pay of any kind were assessed against Mr. Tierney during that two-week period. Do you continue to dispute whether those 16 days have been proven, or do you accept that those 16 days have been established by the government not to have been charged leave improperly? No, we accept that those 16 days were not charged improperly, or certainly that the government carried its burden with respect to those 16 days to show that they were not. It's your burden, isn't it? It's our burden to prove that, but we believe that they disproved that and that it was rebutted. Right, but you carry the burden with respect to all of these claims. Correct. So if the government has shown that 44 days, of your 44 days, 16 of them have been disproven, doesn't that cast a lot of doubt on the testimony of Mr. Tierney or anyone else about the consistent application of this military leave policy by his very agency? Well, I think it's important to separate the sort of two elements of proof that the government took issue with. So the first, what you talked about, was his supervisory status, and I think what that speaks to is him being mischarged over the weekend days. That was what the government policy was, was requiring that reservists, over periods of military service, be charged militarily over intervening non-work days. Well, there was a regulation in place that told the government to do that. Correct, but for example, in the Duncan case, this court was careful to observe that the agency actually put on a witness with knowledge of the leave policy at that specific agency. And this agency witness testified to case-by-case inconsistencies of the charging of leave over intervening non-work days, which basically was not present in this case. The testimony wasn't present, but the fact of the inconsistency is present, because the government has established, and you would agree, that 16 of the days that you alleged you would have been improperly charged, you weren't improperly charged. And so obviously that policy is not being applied in Mr. Tierney's case in a consistent fashion, or you would have been charged for those days also. Well, the policy at issue concerns the mischarging over the weekend. We don't believe simply the fact that certain of the exact dates that we originally claimed that annual leave was charged, where he had to perform his military obligations, necessarily indicates that the policy wasn't followed, such that he wasn't mischarged over the weekend. Well, I don't follow that. Of course it does. Maybe I'm missing something, but I guess my view of it is you very carefully put together this whole chart that goes back. And if he had been improperly charged on the weekend days in February, then in June, when he actually was on military leave on a weekday and had to take annual leave, that military leave wouldn't be there for him, and he would have had to take something else. In contrast, if they didn't mischarge him on those weekend days, then he would still have available military days, because he wouldn't have exhausted all of them, and therefore he wouldn't be charged something else. So you looked at all the weekend days he served, and if he really was improperly charged on all of those days, your calculations were that this is when he would have run out, and this is when he would have started having to take annual leave. Right. Doesn't the fact that he didn't have to take annual leave then necessarily establish that he wasn't mischarged? In our opinion, not necessarily. There's not a development in the record of other things that possibly could have happened, but he states that he took leave without pay on occasion. If something else happened during that year, perhaps he had to do that earlier, which changed it so maybe he exhausted later. We think that the two elements have to be viewed separately, that just because all of the annual leave dates that he thought he was mischarged and that we thought that some of those were rebutted by the agency, we don't think that that necessarily casts into doubt that the agency policy was false, meaning that he was mischarged over the weekend. Let me see if I understand how many days we're talking about that are still in dispute. The number of days has sort of changed as the case is carried through. The administrative judge found that Mr. Tierney should have been credited for 17 days. Is that the number you are seeking? Correct. Everything else above 17, and they're identified in the administrative judge's opinion, you say those 17 days are the only days that remain in dispute. Is that correct? That's correct. We're only seeking the days that were corroborated by the agency. We started with either 44 or 43, depending on which number you look at it, and you knock out 16. That doesn't get you to 17. There's some left over, 11 I think or 10. But whatever happened to those days, we're down to those 17 now. That's correct. Is it because for those 17, those are the only ones when you can corroborate through the civilian pay records the fact that he was charged leave in that pay period, which corresponds at least to the number of hours that you believe he should have not had to take annual leave because he was on military duty? That's correct. According to the testimony developed at the end, it's a little bit unfair to see the days that were deemed sort of inconclusive, whether that's the records were illegible or for whatever reason. That testimony wasn't developed. I assure you the records are not very legible. Having personally labored with these records, yes, they are not quite so legible. ALJ adds to those 17 days beyond relying on those civilian records, as I understand it may actually specific and express credibility findings that in fact Mr. Cherry's testimony as to the application of the policy during that time period was credible. Is that true? That's correct, and that's one issue we have with this is that the board in review didn't address this at all. So his status as a supervisor and his knowledge of the policy. Well, in some ways, actually, it seems that the board rejected those credibility determinations by saying that the 16 days that came out the other way somehow renders the rest of it not credible. Isn't that? My reading of the board's decision was that it wasn't even considered, that basically the information, the presumptions underlying the information were discarded. But if the board did make a credibility determination with respect to Mr. Tierney, my understanding is the Federal Circuit President would require that they at least articulate a reason for disagreeing with the administrative judge's credibility determinations. And in this case, did the board hold any independent hearing? I mean, did they see the witnesses themselves such that it would have been reasonable for them to reject the earlier credibility determination in light of their own? The hearing in this case was by telephone, and the board did have the hearing CD of the audio. So certainly there's an argument that they wouldn't have to do a lot to overrule the credibility determination of the administrative judge because they largely heard what she heard. But my view of the law is that they would still have to articulate a reason for overturning that credibility. So they can make a de novo assessment of credibility, and really they would have had in front of them exactly the same thing the AJ had. The AJ had a telephone hearing, so it's not like she was getting visual or he or she was getting visual clues from the witness, and the MSPB had a CD of that same telephone hearing. Is that right? Correct. But as you say, our case was fairly explicit on the fact that they can't simply reject an ALJ's credibility determinations without having express and rational grounds for doing so. What do you think? How would you characterize the precise standard of review that we have to exercise in this case? We would agree that it is substantial evidence. Well, substantial evidence is easy to say, but sometimes in a case in which the question to us is, has the board correctly determined that the petitioner has failed to satisfy his burden? It's kind of awkward to talk about that in terms of substantial evidence because the party who prevailed doesn't have to introduce any evidence at all. So you have, you think, introduced sufficient evidence to justify a judgment in your favor. The board has disagreed. What should we do in looking at the board's conclusion that your evidence was insufficient, which is essentially the question that they asked? How do we look at that question? What is the question we should ask ourselves? Essentially that the board's conclusion to reverse the administrative judge in this case was not reasonable in light of the evidence before it. So that's really an arbitrary and capricious type standard, is that it? Yeah. Would you like to save your remaining time for rebuttal? Yes. Mr. Goodman. Good morning, Your Honors. May it please the Court. We would agree that it's an arbitrary and capricious standard, Your Honor, and that the board's decision in this case is neither arbitrary nor capricious. We would also agree that Mr. Tierney is credible. We don't think that the board's decision determined that he was in any way not credible. Mr. Tierney testified that he had no independent recollection of the annual weekdays. But he testified as a supervisor the policy was to charge military days on weekends and that he did that in his supervisory capacity. And we don't dispute that he did that in a supervisory capacity. In his agency, that's the way it was being done. It was certainly being done in he did it. We don't dispute that he did it, but that doesn't mean that the entire agency always followed consistently the policy. Aren't we supposed to accept as a presumption that the government does its job? I mean, the agency has a regulation that says this is how you should do it. Don't we start from the presumption of assuming it was done that way? We do. Here, the presumption has been rebutted. In 16 instances? Yes. Why did the fact that you didn't follow your reg 16 times mean we should assume you didn't follow it every other time? Because that shows presumption has been rebutted. With regard to those 16 instances? With regard to consistency of application of the policy. So then we're left with a question, an unknown question. Did the agency ever apply that policy? It's possible. It's also possible it did not. But the agency doesn't dispute that it was, in fact, the policy, right? No, we don't dispute that. And you don't dispute that as a supervisor, Mr. Tierney would have been familiar with the policy and familiar with a supervisor's obligation to enforce the policy, right? We don't dispute that. And you agree that his testimony that he was told to enforce the policy and did enforce the policy was credible, right? We don't dispute that either. Okay, so how is it that the fact that you're able to show that this clear policy that supervisors are told they have to follow, that just because in 16 instances somebody didn't follow it, we should assume that it was never followed? A couple of things. First, as Mr. Tierney's counsel correctly pointed out, the policy was not with respect to what happens at the end, at the 16 days. It's at the front end. So the policy is to charge military leave on intervening weekends. And the question is whether the agency did that. Our contention is that the agency didn't do that with respect to Mr. Tierney and that he has the burden, as Judge Bryson already pointed out, he has the burden of showing that that was done, that in his case intervening weekends were charged against him. If he's correct that that policy was followed, then we don't dispute his math, then these 40-some days, these days would have all been charged against him. He would have had to use annual leave or leave without pay in order to compensate for the earlier military leave. No, not necessarily. Those days would have all been charged against him except where his supervisor screwed up. It's conceivably possible that the supervisor could have screwed up, as you put it, on some of the days and not others. That in itself would rebut the presumption that the agency is always following a consistent pattern. All the evidence in this case shows that whatever there is, all of it militates against what Mr. Tierney is arguing. Whenever we have a situation where we can look, we can read the record. All the evidence militates against what he's arguing. He's the supervisor in the agency. He's told, follow the policy. He says he always follows the policy. He follows the policy. How does that militate against the idea that his agency follows the policy? What I meant was all of the evidence with respect to the leave that was charged to him. He didn't have any independent evidence. He has no independent recollection. He had nothing coming forward. He was in the exact same situation as Mr. Duncan was. I'm sorry. Not at all. Go ahead, please. Let me probe these 16 days a little because they're pretty important to the board, and I guess I think they're pretty important. Were those days in which it was clear that he had already used up his military leave for that year but nonetheless was not charged annually for a day that he was off the military, i.e., under the thesis that he was being charged for intervening days, are those days in which he would have used up all of his leave by charging the intervening days? Yes, Your Honor, because by his thesis, all of the 40-something days took place after he would have already been charged the intervening days. So all of these took place after. I guess I'm just repeating what I said. So his thesis is, I was charged for all of the intervening weekends, and if you just do the math, at some point I run out of military days available to me, and then I had more military service, and we don't dispute that he had more military service, and then he says I was forced to use annual leave or leave without pay. But it turns out that he wasn't. He wasn't. And the 16 days were simply the ones that the agency was able to show that for that pay period, as Judge Moore correctly explained earlier, for that pay period, there was no leave taken at all. So this isn't in the few pages of the record we submitted, but I'm looking at the transcript. And I take it—well, go ahead. I don't want to interrupt you. I was just going to say, Your Honor, that I was looking at the first couple of days, June 19 and 22, which the agency disproved, and Mr. Cuny agrees we disproved. The testimony is just that they fall within pay period 14, and that during pay period 14, he was charged 80 days of military leave. So he was— 80 hours. Hours. I'm sorry. 80 hours of—big difference. 80 hours of military leave. What year is that? That was 1981. 81. 81. And that's at page 39 and 40 of the transcript. But the actual—there's no document that the actual documents that would have made it easy for anyone to prove or disprove this no longer exist, right? Exactly, Your Honor. So we have a government policy that says they're supposed to follow X rule. We have the government having gotten rid of documents that would prove whether or not they followed X rule. And we have now sworn testimony from a supervisor that says that in virtually all instances, X rule was followed. What more could he possibly—and he's got a civilian record, pay record. So what more could he possibly have? He could have his leave and earnings statements. I have co-workers—and preparing for oral argument, I've talked to co-workers who said they had a drawer full of them. I don't personally keep mine. You have your leave and earnings statements back to 1981? I don't keep any of mine. But I have co-workers who say they have them from the time they started working at the government. So that's one possibility. And also, this court was careful in Duncan not to foreclose the possibility that there's additional kinds of evidence that could come up. He could have testified that he remembered. He could have testified, I know, Your Honor, it's absolutely implausible he would remember every specific day. But he could say, I always say— Of course, that's what made him more credible than the situation in Duncan. Again, we don't dispute his credibility. And in the situation in Duncan, the court agreed there needed to be more evidence. And they gave two examples of the kind of more evidence that you would need in order to substantiate one of these claims. Number one was supervisor testimony. Check that box because he's got it. Number two was civilian pay records. Check that box because he's got it. It didn't say he had to have leave and earnings statements, even though that was an issue discussed in Duncan expressly. It said civilian pay records, in the opinion, recognizing the difference between those and leave and earnings statements. Yes, Your Honor. If the civilian pay records had reflected that each time he was charged, he's saying he was charged military leave improperly, or regular leave improperly, that in all those cases, in every case that he was actually charged annual leave, his case would have more weight. But for 16 of those, we know that's not true, which calls into question the whole— that he was improperly charged military leave. When you look back at those pay stubs, they show that during the pay period that corresponds to those 17 days— I know because I looked at every single one of them— it is established that he was, in fact, charged annual leave. You're right. He can't prove that in the 10 work days, the three days of annual leave correspond, happenstance, to the exact three days he was on military leave. You might say, well, wait a minute, Your Honor. He could have gone three days before his military leave on vacation. Maybe his military leave was in Charleston. He decided to go three days early and enjoy the city. I realize that it's possible, but isn't—I mean, that's—he's got an awful lot here. This is a veteran who has served this country in two capacities, in military service as well as an employee of the government. This is a tough argument for me. I take it that the—I'm sorry. Do you want to respond to that? We agree that he's a veteran. I was just going to respond by pointing out this court's decision in Pukolowski—I think I pronounced that right— where the court expressed that and expressed with approval those cases where the agency has, even lacking sufficient evidence, said, we're just going to go ahead and pay all these claims out, and some agencies did that. Some agencies didn't do that. Some agencies required more. We're stuck with the ones that didn't. Over 17 days? Seriously? For a veteran who served this country? I mean, look back to service records. He far exceeded the required amount of reservist duty. I mean, he was gone for months at a time in—what was it—November of 91? You know, I mean, over 17 days? We're here over 17 days, Mr. Fenneman? I'm sorry, Your Honor. But Pukolowski's court also said that there was no duty. He was not owed that money. But in Duncan, it's clear there was no corroboration requirement actually established. It doesn't say there has to be corroboration. It also says that it's on a case-by-case basis that these things are looked at. And in Duncan, there was concern about the very credibility of the statements that were made by the individual. Nowhere says in Duncan that sworn testimony alone couldn't be enough, depending on what that testimony is. That's absolutely correct, Your Honor. We don't think that sworn testimony could never be enough. His sworn testimony only goes to the policy. Again, he testified that he has no recollection of any of the days. I was going to say this earlier. It's possible that he could have said, look, I always take my leave in July. Every year, I took two weeks in July, and I never took days on either side of my military leave. I was quick about coming back. And the board might, in that case, say, we find that credible. So, therefore, that combined with evidence that on those particular days, during the pay period that he took military leave, he was charged any leave, that would be enough. That would be some testimony that tended to agree with this. Mr. Tierney, to his credit, didn't say anything like that. He said, I don't remember, and I wouldn't remember either. So, we're left with simply a question of presumptions and standard of review. The board said, we don't think just because during that pay period, he took some annual leave, that that's enough. Because it could be the same day. It could be different days. We just don't know. And we do have these 16 days that his method comes up with that he should have been charged, and it turns out that's incorrect. So, we know his method for determining the days is not correct. The question in my mind, and to come back to the question I asked earlier, is there strict congruence between his method and the proposition that the agency was charging him for intervening weekends military leave? Because if his theory of the case is broader than what relief he would be entitled to under a proper application of Butterball, then it doesn't really matter that he claimed too much. In other words, he may have thrown too broad a net. But the 16 days, again, to me, that's really an important distinction between either he was claiming something to which he is not entitled, even under Butterball, versus that the 16 days demonstrate conclusively that he was not charged military leave for intervening weekends on some occasions. You say it's the latter. I believe so, Your Honor. And you think that a close analysis of those 16 days would bear out that it is actually affirmative proof that Butterball, in effect, was being followed by the agency, even if in the manner of a departure from agency policy on those occasions? I believe so, Your Honor. Okay. We'd have – that analysis was not – the testimony doesn't bear out that specific analysis, where you go back year to year. It bothered me that it seemed to be a lacuna in the evidence there. But if you're telling me that that is what that evidence establishes conclusively, then – I would need to sit down with a calculator to say affirmatively that in every year – and you have to go year by year and look at which – all those days. The real problem with doing that now, as Judge Moore pointed out, these records are almost impossible to read. That's why we have this problem of math, where we have 17 and 16 and then we have 40-something and they don't add up. Because in a lot of the cases, we just don't know. So we'd have to find a year where we can go back and not just look at the days he's claiming and the days he's charged military leave, but look at all the other kinds of leave and intervening days. And we don't know where we start with the first year. I tried to do this too, and I was unable to. I thought the records being illegible was the bigger of the two problems, but they're both problems. As far as carryover, correct me if I'm wrong on this, but he was using a lot of military – way over 15 days, typically year after year, right? I don't – I think his – looking at the DOD records, he was in service a good deal more than just the two weeks plus. In general, that's true. Typically, he would start each year with 15 days, right? On January 1, you'd start with 15 days and you'd count down from there, right? Yes. In the record, there's a table that the agency prepared and it was corrected. It's Exhibit 3 in the record, which shows how many days he started each year with. Sometimes it was – sometimes he would use it all the year before, not in every year. But mostly he did use it. Mostly he did, yes. Well, I thank you for your argument, Mr. Goodman. Thank you, Your Honor. Mr. Fallon, you have about three minutes of rebuttal. If you need a little extra time, we'll give you an extra minute because Mr. Goodman went over a little. Thank you, Your Honor. I'd like to make a few very quick points. First, Mr. Goodman brought up Kusilowski v. Department of Justice. In that case, the issue was agencies awarding leave not for the harm, i.e., the annual leave that they had to use, but for each day that they were mischarged. And the Federal Circuit approved of those decisions, saying that it's appropriate to give the benefit of the doubt to the veteran in such a situation. The court also noted in Kusilowski that this is appropriate, especially in the face of deficient or incomplete records, which, as we know, is what we're dealing with in most of these cases. So I think the spirit of Kusilowski is applicable to this case. Also, the question was brought up about whether it's just casting too broad a net. As a practical matter, when these claims are brought, generally within a few days of filing the appeal, the administrative judge will issue a jurisdiction order specifically asking us to identify every date that the appellant was mischarged and every date that he has to use annual leave. So we're required to identify these dates very early on. Presumably you've done that before you filed. Yes. So it's not as if you're putting it under a squeegee. No, no, but my point is that we get this before we get any of the agency records or discovery or anything like that. And in Duncan, this court said that a case-by-case analysis is what needs to be done. We believe that the administrative judge in this case engaged in precisely the case-by-case analysis that this court was talking about. But on the 16 days, again, in a sense, if you were over claiming, that actually benefits you in the sense that that demonstrates that the agency may have been applying its policy consistently, but you were just asking for more than you were entitled to under the agency's misapplication of its policy. My question with respect to the 16 days is, is there an explanation for the 17 days? No, the 16 days that the agency has proved that you were not entitled to even though you claimed. Is there an explanation for those 16 days that is inconsistent with the government's argument that they were not applying the policy, OPM's policy, with respect to those days? It would be speculative on my part. This wasn't developed in the record through the expert testimony. But certainly, I think I would have to agree with the government that a more thorough analysis would have to be done, and I'm not sure whether you could conclusively say either way. My review of the records, it was difficult to try and say it wasn't conclusive one way or the other. That's why you sort of gave up on 28, right? Because you were originally alleging 44 days. Government disproved 16. You went from 28 to 17 because of the problems of using the records and the clarity of the demonstrated annual leave charges and things. Correct, and we only are pursuing those days that were confirmed by the civilian pay records, not the days where it was inconclusive. Thank you. That concludes the argument. The case is submitted.